**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jackie Ray HILL, Defendant–Appellant.**

**No. 91–7009.**

United States Court of Appeals, Tenth Circuit.

Aug. 4, 1992.

---

**1462**

Vester Songer, Hugo, Okl., for defendant-appellant.

Richard A. Friedman, Dept. of Justice, Washington D.C. (John Raley, U.S. Atty., and Sheldon J. Sperling, Asst. U.S. Atty., Muskogee, Okl., with him on the brief), for plaintiff-appellee.

Barbara S. Blackman of Cherner & Blackman, Denver, Colo., for amicus curiae Colorado Criminal Defense Bar, Inc.

Before McKAY, Chief Judge, HOLLOWAY, LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA, BALDOCK, BRORBY, EBEL, and KELLY, Circuit Judges.

BALDOCK, Circuit Judge.

In *United States v. Morehead*, 959 F.2d 1489 (10th Cir.1992), a divided panel affirmed Defendant-appellant Jackie Ray Hill's conviction for conspiracy to use or carry a firearm during and in relation to the commission of a drug trafficking offense. *See id.* at 1499–1504. *See also id.* at 1513–14 (Moore, J., dissenting). The conspiracy for which Mr. Hill was convicted was charged under 18 U.S.C. § 371, and the unlawful objective was to violate 18 U.S.C. § 924(c)(1). Mr. Hill had also been charged in the same indictment with conspiring to manufacture, possess and distribute marijuana under 21 U.S.C. § 846; five substantive drug offenses relating to a marijuana cultivation operation at a codefendant's residence; one count of simple possession of a different drug; and one substantive § 924(c) violation. The drug trafficking offenses underlying the § 924(c) unlawful objective of the § 371 conspiracy were the § 846 conspiracy and two of the substantive marijuana offenses which were also alleged as the unlawful objectives of the § 846 conspiracy. Mr. Hill was either acquitted or had the counts dismissed on all charges except for the § 371 conspiracy to violate § 924(c). We granted Mr. Hill's suggestion for rehearing en banc to consider the narrow issue of whether a person can be convicted of conspiracy to violate 18 U.S.C. § 924(c).

■ We begin by considering whether the charge was proper.[1] Section 371 of

---

1. Our concern in granting Mr. Hill's suggestion for rehearing en banc was prompted in part by the fact that this particular charge, while popular with the instant prosecutor, seems to be rarely pursued by the government. The majority found only two other cases in which this had been charged and both involved this particular prosecutor. *See Morehead,* 959 F.2d at 1501 n. 3. *See also United States v. Sullivan,* 919 F.2d 1403 (10th Cir.1990); *United States v. Bullock,* 914 F.2d 1413 (10th Cir.1990). The government claims that this charging practice does not re-

flect an exceptional construction of the statute and cites to six other cases from around the country in which § 924(c) was charged as the unlawful objective of a § 371 conspiracy. Six other prosecutions nationwide since the inception of the statute nearly 25 years ago does not convince us that the charge is not extraordinary. Moreover, all of the cases cited by the government, with one exception, involved prosecutions in which § 924(c) and another crime were charged as the unlawful objectives of a § 371 conspiracy. *See United States v. Fox,* 941 F.2d

title 18 provides that "[i]f two or more persons conspire ... to commit *any offense against the United States* ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both." 18 U.S.C. § 371 (emphasis added). The "essence" of a conspiracy "is the agreement or confederation to commit a crime." *United States v. Bayer,* 331 U.S. 532, 542, 67 S.Ct. 1394, 1399, 91 L.Ed. 1654 (1947). *See also United States v. Felix,* — U.S. —, —, 112 S.Ct. 1377, 1384, 118 L.Ed.2d 25 (1992); *Ianelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616 (1975). The law of conspiracy "seeks to protect society from the dangers of concerted criminal activity," which is viewed as "a greater potential threat to the public than individual delicts," by imposing "criminal sanctions for the agreement alone, plus an overt act in pursuit of it, regardless of whether the crime agreed upon is actually committed." *United States v. Feola,* 420 U.S. 671, 693–94, 95 S.Ct. 1255, 1268, 43 L.Ed.2d 541 (1975); *Callanan v. United States,* 364 U.S. 587, 593–94, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961). Accordingly, to determine whether § 924(c)(1) may be charged as the unlawful objective of a § 371 conspiracy, we must determine whether 18 U.S.C. § 924(c)(1) is an "offense against the United States."

Section 924(c)(1) provides in relevant part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime be sentenced to imprisonment for five years....[2]

18 U.S.C. § 924(c)(1). At first glance, § 924(c)(1) appears to be a penalty enhancement statute. Section 924 is entitled "Penalties," and its remaining subsections set forth penalties for firearms offenses. Section 924(c)(1) provides that its penalty is "in addition to the punishment" provided by the underlying crime, and a conviction under § 924(c)(1) requires proof that the defendant committed the underlying crime of violence or drug trafficking crime. *United States v. Munoz–Fabela,* 896 F.2d 908, 910

---

480, 482 (7th Cir.1991) (conspiracy to execute armed bank robberies and to use firearms during crimes of violence), *cert. denied,* — U.S. —, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992); *United States v. Luskin,* 926 F.2d 372, 373 (4th Cir.) (conspiracy to commit murder, to carry a firearm in relation to a crime of violence and to carry an unregistered firearm), *cert. denied,* — U.S. —, 112 S.Ct. 68, 116 L.Ed.2d 43 (1991); *United States v. Hedgcorth,* 873 F.2d 1307, 1309 (9th Cir.) (conspiracy to destroy property and to possess and use "incendiary destructive devices"), *cert. denied,* 493 U.S. 857, 110 S.Ct. 164, 107 L.Ed.2d 122 (1989); *United States v. Cubean,* 611 F.2d 257, 258 (8th Cir.) (per curiam) (conspiracy to commit bank robbery and to use a firearm in the commission of a felony), *cert. denied,* 445 U.S. 919, 100 S.Ct. 1283, 63 L.Ed.2d 604 (1980); *United States v. Habicht,* 766 F.Supp. 22, 24–25 (D.Mass.1991) (conspiracy to commit bank robbery and to use a firearm during the commission of the bank robbery). Because § 924(c) was charged with its underlying crime as the unlawful objectives of the § 371 conspiracy, these courts were not confronted with the issues presented by the charge in the instant case. A conviction on a charge identical to the one at issue here was recently upheld by the D.C. Circuit. *United States v. Harris,* 959 F.2d 246 (D.C.Cir.1992) (per curiam), *petition for cert. filed,* No. 91–8167 (U.S. May 7, 1992). While the court did not directly address whether the charge was proper, it implicitly recognized its propriety in affirming the conviction over a multiplicity challenge based on the defendant's dual convictions on the § 371 conspiracy and the § 846 conspiracy. *Id.* at 251. *Accord Morehead,* 959 F.2d at 1508–09 (affirming Hill's codefendant's dual convictions for § 371 conspiracy to violate § 924(c) and § 846 conspiracy over multiplicity challenge). While *Harris* supports the government's position here, our research indicates that it, like the present case, represents an exceptional charging practice rather than the norm among prosecutors throughout the country.

2. The statute provides for enhanced penalties for particularly dangerous types of firearms and for second or subsequent convictions. The statute also provides that its sentence is mandatory and may not run concurrent with the sentence imposed for the underlying crime of violence or drug trafficking crime.

(5th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 76, 112 L.Ed.2d 49 (1990); *United States v. Hunter,* 887 F.2d 1001, 1003 (9th Cir.1989) (per curiam), *cert. denied,* 493 U.S. 1090, 110 S.Ct. 1159, 107 L.Ed.2d 1062 (1990). *See also* H.R.Rep. No. 495, 99th Cong., 2d Sess. 10, *reprinted in* 1986 U.S.C.C.A.N. 1327, 1335 (construing earlier version of § 924(c) as requiring "proof of the defendant's commission of the [underlying] crime"). Indeed, § 924(c) has been characterized as a "enhancement" statute. *See Busic v. United States,* 446 U.S. 398, 405, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980) (characterizing earlier version of § 924(c) as an "enhancement scheme"); *Eckert v. Tansy,* 936 F.2d 444, 449 (9th Cir. 1991) (citing § 924(c) as example of "weapons enhancement scheme"); *United States v. Henning,* 906 F.2d 1392, 1399 (10th Cir. 1990) ("924(c) is an enhancement statute"), *cert. denied,* — U.S. —, 111 S.Ct. 789, 112 L.Ed.2d 852 (1991); *United States v. Sherbondy,* 865 F.2d 996, 1010 n. 18 (9th Cir.1988) ("924(c) . . . is a sentence enhancement provision").[3]

Nevertheless, we recently stated that "section 924(c) creates distinct offenses rather than being merely a sentencing enhancement provision." *United States v. Abreu,* 962 F.2d 1447, 1451 (10th Cir.1992) (en banc) (citations omitted) (distinguishing conflicting authority and applying principles of lenity and strict construction based on distinction), *petition for cert. filed,* No. 96–67 (U.S. July 9, 1992). *See also Simpson v. United States,* 435 U.S. 6, 10, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978) ("[§ 924(c) is] an offense distinct from the underlying federal felony"); *United States v. Martinez,* 924 F.2d 209, 211 n. 2 (11th

Cir.) (per curiam) ("924(c)(1) creates a separate offense and separate sentence"), *cert. denied,* — U.S. —, 112 S.Ct. 203, 116 L.Ed.2d 163 (1991); *Munoz–Fabela,* 896 F.2d at 910 ("[924(c)(1)] constitutes an independent basis for criminal liability"); *Hunter,* 887 F.2d at 1003 ("924(c)(1) defines a separate crime rather than merely enhancing the punishment for other crimes"). This interpretation finds support in the statutory language which provides that the underlying offense need only be one for which the defendant *"may* be prosecuted in a court of the United States," and provides for a greater sentence for a "second or subsequent *conviction under this subsection."* 18 U.S.C. § 924(c)(1) (emphasis added).

Because § 924(c) is a separate offense, "a conviction and sentence under § 924(c) requires the full panoply of constitutional safeguards ordinarily granted criminal defendants." *Martinez,* 924 F.2d at 211 (citation omitted). While proof of the underlying crime is necessary to convict under § 924(c), a defendant need not be convicted of the underlying crime in order to be convicted of § 924(c). *United States v. Wilkins,* 911 F.2d 337, 338 n. 1 (9th Cir.1990); *United States v. Robertson,* 901 F.2d 733, 734 (9th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 395, 112 L.Ed.2d 405 (1990); *Munoz–Fabela,* 896 F.2d at 911; *Hunter,* 887 F.2d at 1003. A defendant need not even be charged with the underlying crime to be convicted under § 924(c). *United States v. Wilson,* 884 F.2d 174, 176 (5th Cir.1989). Section 924(c) convictions have been upheld under an aiding and abetting theory, *see United States v. Hamblin,* 911 F.2d 551, 558 (11th Cir.

---

**3.** While several courts have characterized § 924(c) as an enhancement statute, the distinction between a substantive offense and an enhancement statute was not critical to the holding in any of these cases. *See Busic,* 446 U.S. at 399–400, 100 S.Ct. at 1863 (holding that earlier version of § 924(c) could not be applied to a defendant who uses a firearm during the course of a felony which itself authorizes enhancement if a dangerous weapon is used); *Eckert,* 936 F.2d at 449 (rejecting Eighth Amendment challenge to state weapon enhancement statute and citing to § 924(c) to compare penalties); *Henning,* 906 F.2d at 1309 (holding that use of two

firearms during commission of one drug trafficking offense constituted single firearm offense that could not be punished as two separate § 924(c) violations); *Sherbondy,* 865 F.2d at 1003–10 (holding that defendant's actual conduct could not be considered in determining whether a prior conviction was a "violent felony" within the meaning of 18 U.S.C. § 924(e)(1) and citing to earlier case similarly interpreting § 924(c)). These characterizations of § 924(c) as an enhancement statute provide scant support for the proposition that § 924(c) is a penalty enhancement statute as opposed to a separate offense.

1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2241, 114 L.Ed.2d 482 (1991), and under a *Pinkerton* theory.[4] *See United States v. Johnson,* 886 F.2d 1120, 1124 (9th Cir. 1989), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990); *United States v. Reborn,* 872 F.2d 589, 595–96 (5th Cir.1989); *United States v. Diaz,* 864 F.2d 544, 548–49 (7th Cir.1988), *cert. denied,* 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989). In short, notwithstanding the characterization of § 924(c)(1) as an "enhancement" statute, courts have uniformly treated § 924(c) as a substantive offense, distinct from the underlying crime.

In *United States v. Sudduth,* 457 F.2d 1198 (10th Cir.1972), the court held that the earlier version of § 924(c) "was intended to create a separate crime," and was not merely an "enhancement of penalty." [5] *Id.* at 1201–02. The court recognized that "[t]he general placement of the subsection obviously causes much of the present concern as to the intention of Congress," but, after thoroughly examining § 924(c)'s legislative history, reasoned that "[t]he manner in which section 924(c) was adopted by Congress and the fact that it originated in both 1968 and 1970 versions by way of floor amendment helps in understanding why the subsection was placed in the Act where it was." *Id.* at 1200. The court also noted that § 924(c)'s "dependen[ce] upon the basic felony" contributed to "the appearance that the matter relates to the enhancement of the penalty and not to the creation of a separate crime." *Id.* Never-

theless, § 924(c)'s "reference to 'subsequent convictions under this subsection'" and its dependence on "facts or inferences which will be disputed or contested and from which different inferences may be drawn ... mak[ing] the matter properly to be demonstrated to the satisfaction of the jury," led to the conclusion that § 924(c) was intended to create a separate crime. *Id.* at 1201. This reasoning is equally applicable to the present version of the statute.

The Supreme Court cited *Sudduth* with approval in recognizing that the earlier version of § 924(c) "creat[ed] an offense distinct from the underlying federal felony...." *Simpson,* 435 U.S. at 10, 98 S.Ct. at 912 (citing *United States v. Ramirez,* 482 F.2d 807 (2d Cir.), *cert. denied,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973); *Sudduth,* 457 F.2d at 1198). In *Simpson,* the Supreme Court held that a defendant could not be sentenced under both § 924(c) and 18 U.S.C. § 2113(d), the firearms enhancement provision to the bank robbery statute.[6] *Id.* at 16, 98 S.Ct. at 915. The Supreme Court revisited § 924(c) in *Busic,* and, relying on essentially the same reasoning as *Simpson,* held that "a defendant who uses a firearm in the course of a felony that is proscribed by a statute which itself authorizes enhancement if a dangerous weapon is used" may have his sentence "enhanced only under the enhancement provision in the statute defining the felony...." [7] 446 U.S. at 399–

---

**4.** In *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the Supreme Court held that coconspirators may be liable for each others' criminal acts done in furtherance of the conspiracy if the acts are reasonably foreseeable as a necessary and natural consequence of the conspiracy. *Id.* at 646–48, 66 S.Ct. at 1183–84.

**5.** In *Sudduth,* the defendant was initially charged in a two-count indictment; one count alleged a violation of § 924(c). 457 F.2d at 1199. The district court dismissed the § 924(c) count pretrial, and, following the defendant's conviction on the other count, imposed a one-year sentence under § 924(c) to run consecutive to the defendant's sentence on the count for which he was convicted. *Id.* After determining that § 924(c) "was intended and should be proved as a separate crime," the court vacated

the dismissal of the § 924(c) count and the sentence imposed under § 924(c). *Id.* at 1201–02.

**6.** While the *Simpson* Court recognized the possible double jeopardy implications, it avoided the constitutional question by holding that Congress did not intend multiple penalties. *Id.* at 11–12, 98 S.Ct. at 912–13. The Court relied on the legislative history of § 924(c), as well as the rule of lenity and the principle that where two statutes speak to the same concern, the more specific statute will govern. *Id.* at 13–15, 98 S.Ct. at 913–14.

**7.** The issue of whether a defendant could be sentenced under both statutes was clearly foreclosed by *Simpson.* However, in *Busic,* the government argued that it could elect under which of the two provisions the defendant

400, 100 S.Ct. at 1749. *Busic* gives us pause because of the Court's repeated characterization of § 924(c) as an enhancement statute.[8] Were we confronted solely with the differing characterizations of § 924(c) of *Simpson* and *Busic*, this would be a closer case. However, the interpretation of § 924(c) as a substantive offense, distinct from the underlying drug trafficking crime or crime of violence, finds support in the legislative history of subsequent amendments to § 924(c).[9]

In 1984, Congress, responding to the Supreme Court's decisions in *Simpson* and *Busic*, amended § 924(c) to provide for a mandatory consecutive sentence even when the underlying offense provided for an enhanced sentence for use of a firearm. *See* Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 1005, 98 Stat. 1837, 2138. *See also United States v. Lanzi*, 933 F.2d 824, 826 (10th Cir.1991) (discussing legislative history leading to 1984 amendment). In doing so, Congress clearly stated that "[s]ection 924(c) sets out an offense distinct from the underlying felony and is not simply a penalty provision." S.Rep. No. 225, 98th Cong., 2d Sess. 312, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3490. Sim-

ilarly, in 1986, when Congress again amended § 924(c) to include drug trafficking crimes in addition to crimes of violence as a predicate to a § 924(c) conviction, *see* Firearms Owners' Protection Act, Pub.L. No. 99–308, § 104(a)(2), 100 Stat. 449, 456 (1986), it recognized that "[a]lthough ... section 924(c) ... is frequently referred to as a penalty enhancement provision it is in reality a separate offense from crimes of violence...." H.R.Rep. No. 495, 99th Cong., 2d Sess. 10, *reprinted in* 1986 U.S.C.C.A.N. 1327, 1336. Both the 1984 Senate report and the 1986 House report cited *Simpson* for their characterization of § 924(c) as a "distinct" or "separate" offense. Admittedly, *Simpson* was interpreting an earlier version of § 924(c). However, nothing in any of the subsequent amendments to § 924(c) indicates that Congress intended to change § 924(c) from a "distinct" and "separate" offense to a penalty enhancement statute.[10]

We believe that our recent characterization in *Abreu* of § 924(c) as a "distinct" offense rather than "merely a sentencing enhancement provision" is a correct interpretation of the statute. Since a person

---

should be sentenced. 446 U.S. at 403, 100 S.Ct. at 1751.

**8.** For example, the *Busic* Court stated that "§ 924(c) *authorizes the imposition of enhanced penalties* on a defendant who uses or carries a firearm while committing a federal felony." 446 U.S. at 399 (emphasis added). In reviewing the text of the statute to determine congressional intent, the Court stated that § 924(c), "[b]y its terms ... tells us nothing about the way Congress intended to mesh *the new enhancement scheme* with analogous provisions in pre-existing statutes defining federal crimes." *Id.* at 405, 100 S.Ct. at 1752 (emphasis added). Rejecting the government's argument that § 924(c) was actually the more specific statute, the Court stated that "were the Government correct we would be forced to conclude that with regard to firearms cases § 924(c) impliedly repealed *all pre-existing enhancement provisions.*" *Id.* at 407, 100 S.Ct. at 1753 (emphasis added). Similarly, the Court stated, "it is simply not for this Court to substitute its accommodation between old and new *enhancement provisions* for the one apparently chosen by Congress." *Id.* at 410, 100 S.Ct. at 1755 (emphasis added).

**9.** We recognize that our resort to the legislative history is proper only when the statutory lan-

guage is unclear. *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *Abreu*, 962 F.2d at 1450. The fact that § 924 is entitled "Penalties" and subsection (c) provides that its sentence is in addition to the sentence for the underlying crime while at the same time expressly referring to the underlying crime as one which "may" be prosecuted and to "convictions under this subsection" creates the ambiguity that leads us into the legislative history.

**10.** The 1988 amendment to § 924(c) increased the penalty if the firearm is a machine gun, destructive device, or equipped with a silencer; increased the penalty for repeat offenders; and increased the penalty for repeat offenders who use a machine gun, destructive device, or silencer. Anti–Drug Abuse Amendments Act of 1988, Pub.L. No. 100–690, § 6460, 102 Stat. 4181, 4373–74. The 1990 amendment added short barreled rifles and shotguns as warranting a increased penalty, expanded the penalty for repeat offenders who use a destructive device to make it consistent with those who use a machine gun, and eliminated redundant language from the earlier amendment. Crime Control Act of 1990, Pub.L. No. 101–647, §§ 1101, 3527, 104 Stat. 4789, 4829, 4924.

can violate § 924(c)(1) by using or carrying a firearm during and in relation to the commission of a drug trafficking offense, "a conspiracy to commit [the] offense is nothing more than an agreement to engage in the prohibited conduct." *Feola,* 420 U.S. at 687, 95 S.Ct. at 1265. Given § 371's broad language proscribing a conspiracy to commit "any offense against the United States," we can see no reason why § 924(c)(1) cannot be charged as the unlawful objective of a § 371 conspiracy. *See United States v. Harris,* 959 F.2d 246 (D.C.Cir.1992) (per curiam) (affirming conviction for conspiracy to violate § 924(c) against a claim that it was multiplicitous of drug conspiracy charged in separate count), *petition for cert. filed,* No. 91–8167 (U.S. May 7, 1992).

■ Having determined that the charge was proper, we now turn to the conviction in this particular case. Amicus argues that Mr. Hill's conviction cannot stand because he has not admitted to or been convicted of one of the drug trafficking offenses underlying the § 924(c) unlawful objective to the § 371 conspiracy. This argument is premised on the interpretation of § 924(c) as an enhancement statute; we have already rejected this interpretation. Furthermore, a conviction on an underlying drug trafficking offense is not a prerequisite to a substantive § 924(c) conviction. *Wilkins,* 911 F.2d at 338 n. 1; *Robertson,* 901 F.2d at 734; *Munoz–Fabela,* 896 F.2d at 911; *Hunter,* 887 F.2d at 1003. Indeed, the plain language of § 924(c)(1) provides only that the underlying offense be one "for which [the defendant] *may* be prosecuted in a court of the United States." 18 U.S.C. § 924(c)(1) (emphasis added). The fact that § 924(c) is charged as the unlawful objective of a conspiracy does not lead to a contrary result. *Cf. Feola,* 420 U.S. at 686–96, 95 S.Ct. at 1265–69 (rejecting argument that government must show degree of criminal intent in conspiracy count greater than is necessary to convict for substantive offense). While all of the cases holding that a conviction on the underlying offense is not a prerequisite to a conviction on a substantive § 924(c) charge involved defendants who admitted to the commission of the underlying offense, we do not view the admission as critical in light of our recognition of § 924(c) as a substantive offense rather than an enhancement statute. Rather, the defendant's commission of the underlying offense is merely a matter of proof which may be met either by the defendant's admission or through the presentation of evidence sufficient to sustain the government's burden. *See Munoz–Fabela,* 896 F.2d at 911 ("only the fact of the offense ... is needed to establish the required predicate"). *Cf. Wilson,* 884 F.2d at 176 n. 2 (government could not rely on defendant's guilty plea in state court to drug offense but was required to present additional evidence on the predicate drug trafficking offense).

■ We have a more fundamental disagreement with amicus' argument which presupposes that proof of the underlying crime is necessary to a conviction for conspiring to violate § 924(c). While proof of the underlying crime is an essential element of a substantive § 924(c)(1) violation, *Munoz–Fabela,* 896 F.2d at 910; *Hunter,* 887 F.2d at 1003; H.R.Rep. No. 495, 99th Cong., 2d Sess. 9, *reprinted in* 1986 U.S.C.C.A.N. 1327, 1335, the law of conspiracy does not require that essential elements of the unlawful objective of the conspiracy be proven to sustain a conspiracy conviction. "The law of conspiracy ... permit[s] the imposition of criminal sanctions for the agreement alone, plus an overt act in pursuit of it, *regardless of whether the crime agreed upon is actually committed.*" *Feola,* 420 U.S. at 694, 95 S.Ct. at 1268 (emphasis added) (citing *Bayer,* 331 U.S. at 542, 67 S.Ct. at 1399). "The agreement to do an unlawful act is ... distinct from the doing of the act." *Pinkerton v. United States,* 328 U.S. 640, 644, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946) (footnote omitted). *See also Braverman v. United States,* 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942) ("[a] conspiracy is not the commission of the crime which it contemplates, and neither violates nor 'arises under' the statute whose violation is its object") (citations omitted). According-

ly, proof of the underlying drug trafficking crime or crime of violence is not necessary for a conspiracy to violate § 924(c)(1) conviction.

Mr. Hill presents a variation on this same argument, contending that because proof of the underlying crime is necessary to convict a person for a substantive violation of § 924(c)(1), a person who conspires to violate § 924(c)(1) necessarily conspires to commit the underlying crime.[11] The panel rejected a similar argument made by Mr. Hill's codefendant, John Wesley Morehead, Jr., who contended that his conviction for conspiring to violate § 924(c)(1) was multiplicitous of his conviction for conspiring to commit the same drug trafficking offense underlying the § 924(c)(1) unlawful objective. *See Morehead*, 959 F.2d at 1508–09. *Accord Harris*, 959 F.2d at 251. The panel held that a conspiracy to use or carry a firearm during and in relation to a drug trafficking offense required only that the defendant agree to use or carry a firearm and that the defendant intended to commit a drug trafficking offense; the particular drug trafficking offense does not have to be within the scope of the agreement to carry firearms so long as each conspirator intended to commit a drug trafficking offense. *Morehead*, 959 F.2d at 1508–09 ("[a]lthough the firearms conspiracy requires proof that the defendant intended to commit an underlying drug trafficking offense, it does not necessarily require an agreement among the conspirators to commit a drug trafficking offense"). Under the panel's reasoning, a person who conspires to violate § 924(c) does not necessarily conspire to commit the underlying drug trafficking offense but rather need only have the requisite intent to commit it. We need not resolve whether an agreement to commit the underlying offense or merely the intent to commit the underlying offense must be proved to sustain a conviction for conspiracy to violate § 924(c)(1), because

even under Mr. Hill's interpretation, he would not be entitled to relief.

Mr. Hill argues that because he was acquitted of the § 846 conspiracy as well as all the other substantive drug trafficking offenses, the jury could not have rationally convicted him of the § 371 conspiracy to violate § 924(c)(1) when the underlying drug trafficking crimes were the same crimes for which he was acquitted. In *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the Supreme Court confronted an analytically identical situation and rejected the very argument presented by Mr. Hill. In *Powell*, the defendant was acquitted of a drug conspiracy and possession with intent to distribute but convicted of using the telephone to facilitate these same offenses. *Id.* at 59–60, 105 S.Ct. at 474. The Supreme Court held that the inconsistency of convicting on the compound offense while acquitting of the offense that necessarily must be proved to convict on the compound offense did not warrant reversal. *Id.* at 69, 105 S.Ct. at 479. The Court followed the rule first set forth in *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), that " '[c]onsistency in the verdict is not necessary.' " *Powell*, 469 U.S. at 62, 105 S.Ct. at 475 (quoting *Dunn*, 284 U.S. at 393, 52 S.Ct. at 190). *See also Harris v. Rivera*, 454 U.S. 339, 345–46, 102 S.Ct. 460, 464, 70 L.Ed.2d 530 (1981) (per curiam); *United States v. Dotterweich*, 320 U.S. 277, 279, 64 S.Ct. 134, 135, 88 L.Ed. 48 (1943). The Court expressly rejected exceptions to the *Dunn* rule applied by lower courts for conspiracy convictions when the defendant was acquitted of all the overt acts charged as separate substantive counts, *see United States v. Morales*, 677 F.2d 1, 3 (1st Cir.1982), and for telephone facilitation convictions in which the defendant was acquitted of the predicate offense, *see United States v. Brooks*, 703 F.2d 1273, 1278–79 (11th Cir.1983); *United States v. Hannah*, 584 F.2d 27, 30 (3d

---

11. Here, the § 846 conspiracy was alleged as one of the predicates to the § 924(c)(1) unlawful objective of the § 371 conspiracy. Consequently, Mr. Hill's argument as applied to the facts of this case leads down the same path as

amicus' argument—*i.e.*, that proof of the underlying drug trafficking crime is necessary to sustain a conviction for conspiring to violate § 924(c)(1).

Cir.1978). *Powell,* 469 U.S. at 63–64, 105 S.Ct. at 476. The Court reasoned that

> inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise or lenity, arrived at an inconsistent conclusion on the lesser offense.

*Id.* at 65, 105 S.Ct. at 477. The Court declined to recognize an exception to the *Dunn* rule where the jury acquits on the predicate offense but convicts on the compound offense, stating that "[s]uch an exception falls almost of its own weight." *Id.* at 67, 105 S.Ct. at 478. Not only would such an exception "threaten[ ] to swallow the rule, . . . [it] simply misunderstands the nature of the inconsistent verdict problem." *Id.* at 68, 105 S.Ct. at 478. The Court reasoned

> Whether presented as an insufficient evidence argument, or as an argument that the acquittal on the predicate offense should collaterally estop the Government on the compound offense, the argument necessarily assumes that the acquittal on the predicate offense was proper—the one the jury "really meant." This of course, is not necessarily correct; all we know is that the verdicts are inconsistent. The Government could just as easily—and erroneously—argue that since the jury convicted on the compound offense the evidence on the predicate must have been sufficient.

*Id.* *Powell* clearly forecloses Mr. Hill's legal challenge to his conviction for conspiracy to violate § 924(c)(1) based upon his acquittal of the predicate drug trafficking offenses.

The dissenting judge in the initial appeal attempted to detour *Powell* by reasoning that "[t]he interdependence of the charges in the indictment lead [to the conclusion that] the jury could not have rationally acquitted on one count and convicted on the other." *Morehead,* 959 F.2d at 1514 n. 1

(Moore, J., dissenting). This argument misconstrues the standard we apply in reviewing the sufficiency, and, in doing so echoes the very exceptions to the *Dunn* rule that the Supreme Court clearly rejected in *Powell.* In reviewing the sufficiency of the evidence, we determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis added) (citation omitted). *See also United States v. Nall,* 949 F.2d 301, 306 (10th Cir.1991); *United States v. Cardall,* 885 F.2d 656, 673 (10th Cir.1989). Thus, the test is not whether the particular jury in this case acted rationally. To reverse convictions merely because the jury's verdict on separate counts cannot be rationally reconciled would eviscerate the rule set forth in *Powell* because inconsistent verdicts, by their very nature, are irrational if we assume, as we must, that the jury followed the court's instructions. *Powell* addressed this very issue:

> a criminal defendant is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. This review should not be confused with the problems caused by inconsistent verdicts. Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support *any* rational determination of guilt beyond a reasonable doubt. *This review should be independent of the jury's determination that the evidence on another count was insufficient.* The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury *could* rationally have reached a verdict of guilt beyond a reasonable doubt. We do not believe that further safeguards against jury irrationality are necessary.

*Powell,* 469 U.S. at 67, 105 S.Ct. at 478 (emphasis added) (internal citations omitted). The majority reviewed the evidence, and determined, independent of Mr. Hill's acquittal on the other charges, that a ra-

tional trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt. *Morehead*, 959 F.2d at 1502–04. We have no reason to disturb this holding as the issue presented for en banc consideration is strictly a legal one. Mr. Hill's acquittal on the drug trafficking conspiracy and substantive offenses is not a ground to reverse his conviction for conspiring to use or carry firearms during and in relation to the commission of a drug trafficking offense.

AFFIRMED.

MOORE, Circuit Judge, with whom McKAY, Chief Circuit Judge, and HOLLOWAY and BRORBY, Circuit Judges, join, dissenting:

The order granting rehearing en banc in this case provides, "The issue to be addressed is whether a person can be convicted of conspiracy to violate 18 U.S.C. § 924(c)." That is the only matter before us, and it is a purely academic question. Any other consideration is tangential and not within the ambit of the en banc question. Because I disagree with the conclusion reached by the majority on this issue, I must respectfully dissent. In doing so, I conclude that a person cannot conspire to violate § 924(c) because that section does not constitute a distinct crime.[1]

When Congress originally adopted § 924(c) in 1968, it never intended to create anything more than an enhanced penalty for certain crimes. Moreover, none of the subsequent iterations of the section changed that legislative objective. Because of this fact, I believe our original review of § 924(c) in *United States v. Sudduth*, 457 F.2d 1198 (10th Cir.1972), reached an incorrect result which led other courts astray. We should, therefore, carefully reexamine both legislative and judicial history now and correct the mistakes of the past.

The nature of this undertaking requires a very detailed examination of legislative history. Yet, the thread of logic which winds through this history tends to become lost in the maze of detail. To avoid that tendency, I will first set forth the conclusions compelled by my research which, I hope, will provide a road map through the convolution of congressional enactments and judicial decisions.

My initial conclusion is that the plain language of § 924(c) dictates without cavil that it operates only as an independent penalty provision for the enhanced punishment of certain crimes committed with firearms. Indeed, if we were the first to consider the provision, my colleagues in the majority who are motivated by plain language probably would be compelled to that same conclusion.

Nonetheless, this court and many who have followed us have eschewed that plain language and given it a different meaning. Therefore, I believe it is necessary to examine carefully the legislative history attendant to the adoption of the section to underscore why it is wrong to ignore what Congress has written so clearly. In doing so, several previously unrecognized facts become apparent.

Although § 924(c) saw first light as a floor amendment to the Gun Control Act of 1968, H.R. 17735, it was neither hastily conceived nor randomly included within the penalty provisions of the Gun Control Act itself. Indeed, its contents are within the overall design of the Act. Its location is both logical and discrete because the section fits rationally within the conceptual structure of the provisions embracing it.

Thus, a view which regards § 924(c) as an aberrant expression of a hurriedly constructed law is unsupportable. To the contrary, § 924(c) is an articulation of the central premise of the gun control legislation of 1968 which devolved from a public abhorrence of violence and the national priority of increasing sentencing penalties for those who use weapons in the commission of violent crimes. Our first review of the statute in *United States v. Sudduth*, 457

---

1. That is not to say Congress could not criminalize an agreement to use or carry a firearm during a crime of violence or a drug trafficking offense. I merely say that to this point it has not done so.

F.2d at 1198, failed to give proper consideration to these underlying facts.[2]

Moreover, in each of the iterations of § 924(c) enacted in 1970, 1984, 1986, 1988, and 1990, the revisions provide only for heightened sentences for enhanced penalty crimes. Because some of these amendments were adopted in response to decisions of the Supreme Court, they are particularly instructive.

I believe the cases which imply § 924(c) constitutes a separate and distinct crime fail to appreciate fully the intent of the statute and should not be followed. Hence, the majority's determination to join the parade leaves me on the curb side.

## I. *The Original Version*

### A. Introduction

Section 924(c) evolved through a circuitous process of legislative activity concerning law enforcement and gun control in 1967 and 1968. In 1967, Congress took up various anti-crime measures urged by the Johnson administration.[3] Hearings in both houses produced a consensus that dramatic action at the federal level to strengthen law enforcement and curb crime was necessary. Several bills were introduced in the House and the Senate on this theme. One of these, H.R. 5384, restructured federal regulation of the ownership and use of firearms. Two others, H.R. 5037 and S. 917, concerned a wide variety of criminal and law enforcement topics, ranging from electronic surveillance to habeas corpus. These latter two bills became the bases of omnibus crime acts passed in both houses.

The House passed its omnibus act first, the "Safe Streets and Crime Control Act of 1967."[4] The Senate omnibus bill borrowed from the House the provisions of H.R. 5384, which related to federal gun control, and enacted them as Title IV of the Omnibus Crime Control and Safe Streets Act of 1968 (the Omnibus Act).[5] Almost as soon as the new gun control provisions became law, they were amended by the Gun Control Act of 1968 (the Gun Control Act) which contained § 924(c).[6] This Act was also based on the early House gun control bill, H.R. 5384, but was given new vigor by the tragic events of 1968.

Section 924(c) appears at first blush to have sprung Athena-like from the head of its sponsor in the House during debates on the Gun Control Act. In reality, its birthing was considerably more protracted. The legislation whose purpose it expressed so clearly was the product of extensive deliberation and the historical circumstances of 1968. Taken with the language and structure of the statute itself, this context convinces me enhancing penalties for the use of firearms in the commission of crimes went to the heart of legislative objectives that year.[7]

### B. Gun Control and the Legislative Process in 1967, 1968

The genesis of § 924 was in the firearms regulation legislation introduced in the House in 1967, H.R. 5384. A subcommittee of the House Committee on the Judiciary conducted lengthy hearings on this bill and other anti-crime measures proposed by the

---

2. The origin of the legislation in 1968 is critical to my view that we should not follow *Sudduth* and its progeny.

3. President Johnson proposed legislation on the regulation of firearms on Feb. 6, 1967. "National Crime Commission Report," H.Doc. 53, *cited in* H.R.Rep. No. 1577, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 4410, 4412.

4. S.Rep. No. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2115.

5. Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 197, 1968 U.S.C.C.A.N. 237, 270–81.

6. Gun Control Act of 1968, Pub.L. No. 90–618, 82 Stat. 1213, sec. 102, § 924(c), 1968 U.S.C.C.A.N. 1397, 1409.

7. 2A Norman J. Singer, *Sutherland Statutory Construction* § 48.03 (5th ed. 1992) (citations omitted

It is established practice in American legal processes to consider relevant information concerning the historical background of enactment in making decisions about how a statute is to be construed and applied. This would especially be true where there is no case law directly on point, or the statutory language is inadequate or unclear.

Johnson administration,[8] and reported several bills during the course of 1967. The House passed one of these as an omnibus crime act in August of that year.[9]

The gun control provisions of H.R. 5384 were taken up by the Senate as part of its own omnibus crime legislation, S. 917.[10] They comprised Title IV, "State Firearms Control Assistance." [11] Title IV contained a declaration of congressional findings and the introduction to title 18 of the U.S.Code of a new chapter entitled "Firearms." [12] Section 924 provided "Penalties" for violations of the provisions of the new chapter.[13] These penalties, having originated in a House bill in 1967 and made their way into the Senate's omnibus crime legislation, were enacted into law June 6, 1968, in the "Omnibus Crime Control and Safe Streets Act of 1968." [14] It was Title IV of this act, § 924, into which § 924(c) was inserted later by the Gun Control Act as an amendment.[15]

On June 6, 1968, the day the Omnibus Act passed, Robert F. Kennedy was assassinated and the demand to enhance penalties for crimes committed with firearms became more urgent. Even though the Omnibus Act was only four days old, the Gun Control Act, H.R. 17735, was introduced in the House at the request of the Department of Justice on June 10, 1968, to amend Title IV of the Omnibus Act.[16] The Senate introduced a similar measure. Justice Rehnquist, construing § 924(c) in this historical context, later remarked:

> Several different bills dealing with firearms control, which had been bottled up in various stages of the legislative process prior to June 1968, were brought to the floor and enacted with dramatic swiftness following the assassination of Senator Robert F. Kennedy in the early part of that month. Senator Kennedy's assassination, following by less than three months the similar killing of Reverend Martin Luther King, obviously focused the attention of Congress on the problem of firearms control. *It seems to me not only permissible but irresistible, in reading the language of the two statutes, to conclude that Congress intended when it enacted § 924(c) to authorize the enhancement of the sentence already imposed by virtue of 18 U.S.C. § 2113(d).*

*Simpson v. United States*, 435 U.S. 6, 18, 98 S.Ct. 909, 915, 55 L.Ed.2d 70 (1978) (Rehnquist, J., dissenting) (emphasis added). Both houses passed bills essentially in the form of H.R. 17735, which became public law number 90–618.[17]

---

**8.** Subcommittee No. 5 of the Committee on the Judiciary, Anti–Crime Program hearings, Serial No. 3, 90th Cong., 1st Sess., *cited in* H.R.Rep. No. 1577, 1968 U.S.C.C.A.N. at 4412.

**9.** H.R. 5037, the "Safe Streets and Crime Control Act of 1967." *See* H.R.Rep. No. 1577, 1968 U.S.C.C.A.N. at 4412; *see also* 1968 U.S.C.C.A.N. at 2112. The title of this act was changed in conference. *See* H.R.Conf.Rep. No. 1956, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 4426.

**10.** *See* H.R.Rep. No. 1577, 1968 U.S.C.C.A.N. at 4412; *see also* S.Rep. No. 1097, 1968 U.S.C.C.A.N. at 2115.

**11.** S.Rep. No. 1097, 1968 U.S.C.C.A.N. at 2113, 2115.

**12.** Title IV, ch. 44, 1968 U.S.C.C.A.N. at 270–81.

**13.** Ch. 44, § 924, 1968 U.S.C.C.A.N. at 279.

**14.** 1968 U.S.C.C.A.N. at 2112. The Omnibus Act grew out of separate bills in the House and Senate introduced in 1967. The House bill, H.R. 5037, was passed August 8, 1967; the Sen-ate bill, S. 917, was passed May 24, 1968. When the bills were sent to conference, the Senate bill was offered as a substitute for the language of the House bill, and the legislation was passed in the House June 6, 1968. It became Pub.L. No. 90–351 on June 19, 1968. H.R.Rep. No. 1577, 1968 U.S.C.C.A.N. at 4412.

**15.** Omnibus Crime Control and Safe Streets Act of 1968, title IV, sec. 902, § 924, 1968 U.S.C.C.A.N. at 279. Gun Control Act of 1968, title I, sec. 102, § 924(c), 1968 U.S.C.C.A.N. at 1409.

**16.** H.R.Rep. No. 1577, 1968 U.S.C.C.A.N. at 4412.

**17.** 1968 U.S.C.C.A.N. at 4410. The House Judiciary Committee report on the Gun Control Act was submitted June 21, 1968, two weeks after final passage of the Omnibus Act including Title IV, and two days after that Act became law. It is difficult to tell from the House Report whether the fact-finding it summarizes as grounds for the enactment of the Gun Control Act was part of the 1967 hearings on H.R. 5384. Under "Ob-

Section 924(c) was added as a floor amendment in the House during passage of the Gun Control Act. I discuss the passage of the Gun Control Act further below. One observation on its confused evolution is in order, however. The dramatic increases in crimes committed with firearms in 1967 and 1968,[18] the lengthy and intensive legislative attention to firearms control, and the assassinations of Robert F. Kennedy, Martin Luther King, Jr., and Medgar Evers all underscore a congressional purpose to increase federal regulation of firearms and enhance penalties for those who would use firearms in the commission of felonies. Section 924 was the manifestation of this intent to increase penalties, both in the Omnibus Act and its later amendment by the Gun Control Act. This extrinsic evidence of congressional purpose is further strengthened by an analysis of the internal structure of Title IV and § 924 in the Omnibus Act, and the placement of § 924(c) within this structure in the Gun Control Act.

### C. Chapter 44: "Firearms"

Chapter 44, the "Firearms" provisions of Title IV of the Omnibus Act, set out a more stringent federal gun control regime than had existed previously. Section 924 described penalties for violations of the new provisions. The principal purpose of Title IV was to "keep firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency, and to assist law enforcement authorities in the States and their subdivisions in combating the increasing prevalence of crime in the United States."[19]

Each of the sections of Title IV was addressed to this purpose. For example, Section 922 entitled "Unlawful acts"[20] contained prohibitions on importing, dealing and manufacturing firearms, licensing requirements and mail-order restrictions, and a subsection which made knowingly transporting a stolen firearm or destructive device a crime.[21] It is particularly noteworthy that, from the outset, the legislative practice when defining these new crimes was to begin every subsection of 922 with the introductory phrase: "It shall be unlawful—for...." The omission of similar language from subsection 924, in either its original or present form, is therefore especially pregnant.

Section 923 described requirements for licensing and for doing business as a firearms or ammunition importer, manufacturer or dealer.[22] Thus the order of the chapter was: definitions, followed by criminal acts, followed by licensing requirements, followed by penalties.

Section 924 provided penalties for violations of the actions deemed to be "Unlawful acts" by *other* sections of the chapter. So, for example, § 924(a) stated:

Whoever violates *any provision of this chapter* or knowingly makes any false statement or representation ... *shall be fined not more than $5,000 or imprisoned not more than five years, or both.*

1968 U.S.C.C.A.N. at 279 (emphasis added). Subsection 924(b) stated:

Whoever, with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year ... ships, transports, or receives a firearm in interstate or foreign commerce *shall be*

---

jections to the bill," for example, the Report states "[t]he committee has considered a number of objections to the pending legislation." H.R.Rep. No. 1577, 1968 U.S.C.C.A.N. at 4414. Although the Report never discusses any hearings on the Gun Control Act of 1968, one must assume objections to the legislation could only have been introduced during such hearings. Because the Gun Control Act is principally concerned with Chapter 44, including § 924, and because these sections were taken from the earlier hearings and first enacted as Title IV, I conclude, contrary to *Sudduth,* hearings were

held on H.R. 17735 and its precursor legislation in 1967. *See Sudduth* 457 F.2d at 1199.

**18.** *See, e.g.,* H.R.Rep. No. 1577, 1968 U.S.C.C.A.N. at 4413.

**19.** S.Rep. No. 1097, 1968 U.S.C.C.A.N. at 2113–14.

**20.** § 922, 1968 U.S.C.C.A.N. at 274–77.

**21.** § 922(g), 1968 U.S.C.C.A.N. at 277.

**22.** § 923, 1968 U.S.C.C.A.N. at 277–79.

*fined not more than $10,000 or imprisoned not more than ten years, or both.*

*Id.* (emphasis added).

The original subsection 924(c) of the Omnibus Act involved forfeiture provisions penalizing the use of firearms in violating the provisions of the chapter, or any regulations under it, or *"any other criminal law of the United States."* This first subsection (c) read:

> *Any firearm* or ammunition involved in, or used or intended to be used in, *any violation of the provisions of this chapter,* or a rule or regulation promulgated thereunder, or *violation of any other criminal law* of the United States, *shall be subject to seizure and forfeiture....*

*Id.* (emphasis added).

The provision which we now know as § 924(c) was inserted as an amendment to the Gun Control Act during final passage in the House. The earlier § 924(c) in the Omnibus Act was redesignated as § 924(d).[23] These early versions of § 924 support the conclusion that the placement of the current subsection (c) within § 924 was both intended and logical.

In short, subsections (a) and (b) of § 924, "Penalties," in the Senate Omnibus bill clearly described penalties of fines or imprisonment for "Unlawful acts" outlined in the preceding sections of Chapter 44, "Firearms." [24] Like subsections (a) and (b), subsection (c) operated as a "Penalt[y]" for violations of the provisions of the chapter or for violations of other criminal laws. In subsection (c) the penalty was forfeiture, rather than a fine or imprisonment, for using a weapon illegally. Like the subsequent § 924(c) with which we are concerned, the original provision did not *create* a crime, but intended only to provide for a *type of penalty* for the violation of a crime described elsewhere in the specific law, or in the general criminal laws.

## D. Section 924(c)

The provision which is now § 924(c) was proposed as a floor amendment to the Gun Control Act by Representative Poff. Section 924(c) penalized with a fine or imprisonment someone who uses firearms to commit an underlying crime described elsewhere. This amendment was inserted logically between subsection (b), which punished acquisition of a firearm with intent to commit another crime, and the original subsection (c), which penalized with forfeiture use of a firearm to commit another crime. As enacted, the amendment stated:

> Whoever—
>
> (1) uses a firearm to commit any felony which may be prosecuted in a court of the United States, or
>
> (2) carries a firearm unlawfully during the commission of any felony which may be prosecuted in a court of the United States,
>
> shall be sentenced to a term of imprisonment for not less than one year nor more than 10 years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to a term of imprisonment for not less than five years nor more than 25 years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of such person or give him a probationary sentence.

(emphasis added). The redesignated § 924(d) read:

> Any firearm or ammunition involved in or used or intended to be used in, any violation of the provisions of this chapter or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States, shall be subject to seizure and forfeiture....

Gun Control Act of 1968, § 924(d), 1968 U.S.C.C.A.N. at 1409.

---

**23.** *See United States v. Sudduth,* 457 F.2d 1198, 1199 (10th Cir.1972):

> This present subsection of Title 18 was part of the original Omnibus Crime Control and Safe Streets Act of 1968. The section originally contained penalties in subsection (a) thereof which related to Chapter 44 as a whole. *These penalties thus related directly to the recitation of "unlawful acts" in the body of the Act.* Section 924(c) was added and the original section 924(c) was redesignated (d) as a House Floor Amendment during the course of the debates on the Gun Control Act (H.R. 17,735).

**24.** Sec. 902, ch. 44, § 924(a), (b), and (c), 1968 U.S.C.C.A.N. 271, 279.

Gun Control Act of 1968, § 924(c), 1968 U.S.C.C.A.N. at 1409.

This floor amendment adding § 924(c) simply imposed a punishment of not more than ten years' imprisonment for the violation of the underlying felony specified elsewhere in the statute or in other statutes. Section 924(c) thus fits nicely between § 924(b), which penalized shipping firearms with intent to commit a felony, and the original § 924(c) of the Omnibus Act, which provided the specific penalty of forfeiture for the involvement of a firearm in a violation of the chapter or any criminal law. These penalties were expanded with the addition of § 924(c) to include a penalty (fine or imprisonment), which applied to firearms involved in the commission of felonies specified elsewhere in the chapter or in the criminal laws. The current form of § 924(c) follows that same construction.

The statement of Representative Poff introducing § 924(c) as an amendment on the House floor is instructive:

> For the sake of legislative history, it should be noted that my substitute is not intended to apply to title 18, sections 111, 112, or 113 which *already define the penalties* for the use of a firearm in assaulting officials, with sections 2113 or 2114 concerning armed robberies of the mail or banks, with section 2231 concerning armed assaults upon process servers or with *chapter 44* which defines other firearm felonies.

Rep. Poff, 114 Cong.Rec. 22231, 22232 (1968) (emphasis added), *cited in Simpson*, 435 U.S. at 13, 98 S.Ct. at 913.

Shortly after the House passed the Poff amendment, a similar amendment was introduced to the Senate gun control bill, S. 3633, by Senator Dominick.[25] It also "provided for increased punishment whenever a firearm was used to commit a federal offense."[26]

[T]he Senate amendment, contrary to Mr. Poff's view of § 924(c), would have permitted the imposition of an *enhanced sentence* for the use of a firearm in the commission of *any federal crime*, even where allowance was already made in the provisions of the substantive offense for *augmented punishment* where a dangerous weapon is used.

114 Cong.Rec. at 27143 (emphasis added), *cited in Simpson*, 435 U.S. at 14, 98 S.Ct. at 914.

Once the Gun Control Act passed the Senate, both versions of § 924(c) were sent to the Conference Committee on the Act. The House provision, Rep. Poff's amendment, was adopted by the Conference, with a reduction in the penalties originally proposed.[27]

While it is true there are no separate committee reports dealing specifically with the floor amendment to H.R. 17735 that became § 924(c), there is the report of the Conference on the Act. That report "is accorded a good deal more weight than the remarks even of the sponsor of a particular portion of a bill on the floor of the chamber."[28]

The Conference Report on H.R. 17735 stated: "The Senate struck out all of the House bill after the enacting clause and inserted a substitute amendment. The committee of conference has agreed to a substitute for both the House bill and the Senate amendment."[29] The Conference Report enumerated the compromises reached with the Senate on the bill. The first was a change in title from the House title, "State Firearms Control Assistance Act of 1968," to the "Gun Control Act of 1968."[30] The definitional section of the Conference Report provided the following explanation of the compromise agreement on defining crimes:

---

**25.** *See Sudduth*, 457 F.2d at 1200.

**26.** 114 Cong.Rec. 27142 (1968), *cited in Simpson*, 435 U.S. at 14, 98 S.Ct. at 913–14.

**27.** *See Sudduth*, 457 F.2d at 1200; *see also Simpson*, 435 U.S. at 14, 98 S.Ct. at 914 (citing H.R.Conf.Rep. No. 1956, 1968 U.S.C.C.A.N. at 4426).

**28.** *Simpson*, 435 U.S. at 17, 98 S.Ct. at 915 (Rehnquist, J., dissenting).

**29.** H.R.Conf.Rep. No. 1956, 1968 U.S.C.C.A.N. at 4426.

**30.** *Id.*

*Definition of crimes*—Both the House bill and the Senate amendment prohibited the shipment, transportation, and receipt of firearms and ammunition by persons under indictment for, or convicted of, certain crimes.... A difference between the House bill and the Senate amendment which recurs in the provisions described above is that the crime referred to in the House bill is one punishable by imprisonment for more than 1 year and the crime referred to in the Senate amendment is a crime of violence punishable as a felony.

Under both the House bill and the Senate amendment the crimes were defined to exclude Federal and State offenses relating to antitrust violations and similar business offenses. The conference substitute adopts the crime referred to in the House bill (*one punishable by imprisonment for more than 1 year*) but excludes from that crime *any State offense* not involving a firearm or explosive, *classified by the laws of the State* as a misdemeanor, and punishable by a term of imprisonment of not more than 2 years.

*Id.* at 4428 (emphasis added).

Two observations arise from this report. First, because the definition of the underlying crime was constructed to operate with reference to crimes defined in the laws of the states, it is exceptionally difficult to reason that § 924(c) itself created a criminal offense. The statute must, by definition, relate to crimes described elsewhere—including in this version of the statute, the criminal codes of the states.

Second, the Conference Report, like the underlying House and Senate bills, described acts made unlawful by the legisla-

tion without mentioning § 924(c) as a criminal act, even though the floor amendment adopting it had already been passed.[31] The floor amendment, as would be expected, is treated as a "Penalty."[32] Under the "Penalties" section the Conference Report describes those of the original two bills. The Senate bill had listed stiffer penalties for a violation of Chapter 44, but the Conference Committee adopted the House version. Omission of § 924(c) from "Unlawful acts" further undercuts the notion that § 924(c) can function as an independent crime. Thus, to this point in its legislative history, § 924(c) lived in the eyes of Congress only as a penalty provision, and not as a distinct crime.

It is clear that the Gun Control Act was the last iteration in a lengthy process of legislative activity beginning in 1967 which made certain acts criminal for the first time and specified new penalties for those and other felonies. The penalties in § 924(c) are part of this continuum, rather than a hurried, unrelated addition which had no real relevance to the legislative context. The prevailing concern at the time of passage in 1968 of both the Omnibus Act and the Gun Control Act was to strengthen federal regulation for the illegal use of guns and increase penalties to stem the rise in violent crimes committed with weapons.

Given this context, I have to disagree with *Sudduth* that the floor amendment to H.R. 17735 fell outside the pale of topics discussed during the evolution of the legislation.[33] Increased penalties for the use of weapons during the commission of violent crimes went to the heart of the statute's purpose, and the penalty provision must be interpreted in that light.[34] We were

---

**31.** *Id.* at 4428–30.

**32.** *Id.* at 4431.

**33.** *Sudduth,* 457 F.2d at 1199–1200:
It should be pointed out that the use of a gun during the commission of a felony constituted an entirely different subject than had theretofore been considered during the course of the debates on the original Omnibus Crime Control Act of 1968. The penalties in the original Act related to the acts which were declared unlawful in the Omnibus Bill, and which acts

were for the most part related to the sale, importation and transportation of firearms.

**34.** *See* 2A *Sutherland* § 45.05 (5th ed. 1992): [In] search for legislative intent, courts look to the objective to be attained, the nature of the subject matter and the contextual setting. The statute *is construed as a whole with reference to the system of which it is part....* [L]egislative intent must prevail if it can be reasonably discovered in the language used and that language must be construed in the light of the intended purpose.

wrong, therefore, in *Sudduth* to construe § 924(c) outside its context of the other penalty provisions of Chapter 44. *Sudduth*, 457 F.2d at 1200.

Section 924(c) was amended in 1970, 1984, 1986, 1988, and 1990. In each case, the amendments concerned only increasing the penalties and broadening the scope of crimes to which these penalties would apply. This history lends support to my conclusion that the purpose of the original statute was penalty enhancement. Following the rule of statutory construction stated in *Sutherland* that subsequent amendment is strong evidence of the intent of the first statute,[35] we must next consider the amendments to § 924(c) from 1970 to the present and some of the case law interpreting those amendments.

## II. *The 1970 Amendments*

The 1970 amendments to § 924(c) are in Title II of the 1970 Omnibus Crime Control Act (the 1970 Act), and are entitled "Stricter Sentences."[36] The amendatory language is emphasized:

(c) Whoever—

(1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, or

(2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States,

shall, *in addition to the punishment provided for the commission of such felony*, be sentenced to a term of imprisonment for not less than one year nor more than ten years. In the case of his

(emphasis added).

second or subsequent conviction under this subsection, such person shall be sentenced to a term of imprisonment for not less than *two nor more than twenty-five years* and, notwithstanding any other provision of law, the court shall not suspend the sentence *in the case of a second or subsequent conviction* of such person or give him a probationary sentence, *nor shall the term of imprisonment imposed under this subsection run concurrently with any term of imprisonment imposed for the commission of such felony.*

The 1968 § 924(c) analogous penalty for a second or subsequent conviction provided "not less than five years nor more than 25 years...."[37] This is the only amendment in the 1970 Act dealing with Chapter 44 or the penalties of § 924.[38]

The Conference Report on the Act stated:

The Senate amendment contained a provision not in the House bill amending a section of the Gun Control Act of 1968 *that imposes additional penalties* for the use of a firearm to commit, or for the carriage of a firearm unlawfully during the commission of, a Federal felony. The Senate amendment reduced *the minimum sentence for a second or subsequent offense* from five to two years, and also provided that a sentence could not run concurrently with any sentence imposed for the underlying Federal felony. The conference substitute adopts the Senate amendment.

H.R.Conf.Rep. No. 91–1768, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.C.C.A.N. 5842, 5848 (emphasis added).

---

**35.** 2B *Sutherland* § 49.11 (5th ed. 1992) states: Where a former statute is amended, or a doubtful meaning clarified by subsequent legislation a number of courts have held that such amendment or subsequent legislation is strong evidence of legislative intent of the first statute.
See also *DeVargas v. Mason & Hanger–Silas Mason Co.*, 911 F.2d 1377, 1388 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991).

**36.** Omnibus Crime Control Act of 1970, Pub.L. No. 91–644, title II, sec. 13, § 924(c), 84 Stat.

1880, *reprinted in* 1970 U.S.C.C.A.N. 2206, 2216–17.

**37.** § 924(c), 1968 U.S.C.C.A.N. at 1409.

**38.** The 1970 Act originated in the House as H.R. 17825 and passed June 30, 1970. 1970 U.S.C.C.A.N. at 5804. It was referred to the Senate Judiciary Committee, which offered an amendment in the nature of a substitute. The Senate passed the Omnibus Crime Control Act on October 8, 1970. The conference reported the Act on December 16, 1970, and the conference bill was passed in both houses the next day.

This amendment was added during floor consideration. The Conference Report is thus the only committee report available on the 1970 version of § 924(c). The language of the amendment and the Report clearly indicate only an intent to modify the application of the § 924(c) sentencing provisions. The amending language, "in addition to the punishment provided for the commission of such felony, be sentenced," is particularly important as it clarifies the provision Congress had passed as a floor amendment only two years earlier.

*Sudduth* states this process of floor amendment in both 1968 and 1970 explains the placement of § 924(c). "This legislative procedure shows why the subject matter of the subsection is somewhat foreign to the balance of section 924." [39] I respectfully disagree. The 1970 amendment originated, according to *Sudduth*, in a separate Senate bill.[40] "The floor debate centered on the matter of increasing the severity of the punishment and the debate was directed to this point." [41] The 1970 amendments follow almost exactly the legislative rationale of the 1968 Act.

### III. *Judicial Construction of § 924(c)*

The three most pertinent cases to this analysis are *United States v. Sudduth, Simpson v. United States,* and *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). All three cases construed § 924(c) after the 1970 amendments had increased some of the original penalties and added the language, "in addition to the punishment provided for the commission of such felony...."

*Sudduth* has been cited most frequently for the proposition that § 924(c) creates a separate crime. While this is part of *Sudduth*'s holding, I see the essential concern of *Sudduth* differently. The defendant in the case had been charged in two counts with selling heroin and with carrying a firearm "unlawfully" during the commission of that felony. The district court had dismissed the § 924(c) count but imposed its penalties notwithstanding for the heroin conviction.[42] Construing the new statute on first impression, *Sudduth* held the § 924(c) count should not have been dismissed, and the sentence should be vacated.[43] While I disagree with the holding of *Sudduth* that § 924(c) creates a separate crime, I would maintain the *Sudduth* court properly was concerned with *notice* in charging § 924(c) to advise the defendant of the possibility of a sentencing enhancement. *Sudduth*'s insistence that § 924(c) be linked to an underlying felony, I think, supports this reading.[44]

*Simpson* is instructive even though it was involved with a slightly different aspect of § 924(c) than that which concerns us. The *Simpson* Court dealt only with whether the enhancing penalties of § 924(c) were applicable to a weapons crime for which the penalty was enhanced by another statute. The Court held Congress did not authorize "the imposition of the additional penalty of § 924(c) for commission of bank robbery with firearms already subject to enhanced punishment under § 2113(d)." [45]

*Simpson* illuminates the improbable, though not necessarily illogical, legal reasoning which has brought us to reconsider the purpose of § 924(c) some fourteen years later. *Simpson,* and *Sudduth* for that matter, are not on point for our purposes because *both* cases accept the proposition that there must be an underlying felony to effect the enhancement provisions of the statute. The question in *Simpson* was, simply, did Congress intend doubly enhanced penalties for a single course of criminal conduct? The Court said no, but the Congress disagreed with that result and amended the law to make its intent clearer. I shall discuss these amendments later.

---

**39.** 457 F.2d at 1200.

**40.** *Id.*

**41.** *Id.*

**42.** 457 F.2d at 1199.

**43.** *Id.* at 1202.

**44.** 457 F.2d at 1200 ("[the subsection] refers to and is dependent upon the basic felony").

**45.** *Simpson,* 435 U.S. at 13, 98 S.Ct. at 913.

In this light, the. *Sudduth* mantra, repeated in *Simpson* and most § 924(c) cases since, that the statute "intended to create a separate offense" [46] is a non sequitur. Indeed, the fact that § 924(c) was intended only to enhance penalties for an underlying crime was never disputed in either *Sudduth* or *Simpson.*

As might be predicted, it is illuminating to read the rest of the sentence in *Simpson* in which Justice Brennan cites the *Sudduth* holding that § 924(c) creates a separate offense:

> *Although* we agree with the Court of Appeals that § 924(c) creates an offense distinct from the underlying federal felony, *United States v. Ramirez,* 482 F.2d 807 (CA2 1973); *United States v. Sudduth,* 457 F.2d 1198 (CA1 (sic) 1972), *we believe that this is the beginning and not the end of the analysis necessary to answer the question presented for decision.* ⸱ ⸱

*Simpson,* 435 U.S. at 10, 98 S.Ct. at 911 (emphasis added). The Court clearly was conceding a peripheral issue to the *Sudduth* court before proceeding to hold that Congress could not have intended to enhance an enhancement, an issue which was never before the *Sudduth* court in any event. Justice Brennan's statement is dictum that simply does not represent a holding of the Supreme Court on whether § 924(c) creates an enhancement of penalties or a discrete substantive crime of its own. On the contrary, the Court *had* to conclude § 924(c) was an enhancement before it could logically decide Congress did not intend to pile one enhancement on another. Because § 924(c) cannot exist, Janus-like, as *both* a substantive criminal offense and a penalty enhancement, the result the Court reached in *Simpson* could not have come about if the Court had believed § 924(c) constituted a discrete crime.

Justice Rehnquist dissented in *Simpson,* taking issue with the Court's use of Rep.

Poff's statement on the House floor as an authoritative interpretation of his own amendment and with what Justice Rehnquist perceived as disregard of "plain language" and "plain meaning." [47] He concluded Congress had indeed passed § 924(c) to enhance all penalties when a firearm was used to commit an underlying crime, even those crimes for which enhanced penalties were already provided. "The language of § 924(c), together with the circumstances surrounding its enactment, makes it abundantly clear to me that it was intended to authorize enhancement of punishment in these circumstances." [48]

In *Busic,* the majority and dissenting opinions again clearly interpreted § 924(c) as introduced in the House and adopted by the Congress as an enhancement provision. Justice Brennan repeatedly referred to the enhancement scheme of § 924(c):

> The parties to the instant cases agree that *Simpson* clearly prohibits the imposition on these petitioners of *similarly enhanced sentences* under both § 924(c) and § 111. But the Government contends that *Simpson* resolved *only the double enhancement question....*
>
> ....
>
> Our reasoning has several strands. It begins, as indeed it must, with the text and legislative history of § 924(c). By its terms, that provision tells us nothing about the way Congress intended to mesh *the new enhancement scheme with analogous provisions* in pre-existing statutes defining federal crimes.
>
> ....
>
> ... More broadly, it is simply not for this Court to substitute its accommodation *between old and new enhancement provisions* for the *one apparently chosen* by Congress.

*Busic,* 446 U.S. at 403, 405, 410, 100 S.Ct. at 1751, 1752, 1755 (emphasis added).

**46.** *Sudduth,* 457 F.2d at 1202; *accord Simpson,* 435 U.S. at 10, 98 S.Ct. at 912 ("§ 924(c) creates an offense distinct from the underlying federal felony, *United States v. Ramirez,* 482 F.2d 807 (CA2 Cir.1973); *United States v. Sudduth,* 457 F.2d 1198 (CA1 (sic) 1972` ...").

**47.** *Simpson,* 435 U.S. at 16–20, 98 S.Ct. at 914–16 (Rehnquist, J., dissenting).

**48.** *Id.* at 20, 98 S.Ct. at 916.

That § 924(c) is only an enhancement provision finds equally strong articulation in the dissenting opinions. Justice Stewart, joined by Justice Stevens, wrote in dissent:

> I agree with the holding in *Simpson* that Congress did not intend to "pyramid" punishments for the use of a firearm in a single criminal transaction. Yet I find quite implausible the proposition that Congress, in enacting § 924(c)(1), did not intend this *general enhancement provision* —with its stiff sanctions for first offenders and even stiffer sanctions *for* recidivists—to serve as an alternative source *of enhanced punishment* for those who commit felonies, such as bank robbery and assaulting a federal officer, that had been previously singled out by Congress as warranting *special enhancement,* but for which a *lesser enhancement sanction than that imposed by § 924(c)* had been authorized....
>
> It is my view ... that § 924(c)(1) applies to all federal felonies, though subject to the limitation in *Simpson* against double punishment. Under this reading of the statute, the Government *may obtain an enhanced sentence under either § 924(c)(1) or the enhancement provision for the predicate felony,* but not under both.

*Busic,* 446 U.S. at 416–17, 100 S.Ct. at 1758 (Stewart, J., dissenting) (emphasis added).

As in *Simpson,* Justice Rehnquist dissented, stating again his belief the enhancement scheme of § 924(c) was obvious from the statute's plain language.

> I am quite amazed at this Court's ability to say that 18 U.S.C. § 924(c) "tells us nothing about the way Congress intended to mesh the new enhancement scheme with analogous provisions in pre-existing statutes defining federal crimes," [*Busic,* 446 U.S. at 404, 100 S.Ct.] at 1752, even though that section provides quite clearly that the use of a firearm in the commission of "any felony" shall be punished by up to 10 years' imprisonment "in addition

to the punishment provided for the commission of such felony...."

*Busic,* 446 U.S. at 417, 100 S.Ct. at 1758 (Rehnquist, J., dissenting).

It is clear from both *Simpson* and *Busic* that, while § 924(c) might be considered an independent statutory provision governing *sentencing,* there was never any question § 924(c) was only an enhancement scheme and not the creation of a substantive crime itself. The only question decided by the Court in both cases was how much enhancement, and to what crimes enhancement would apply. I think this can also be said of *Sudduth,* which even in holding § 924(c) created a separate offense, expressly stated "it refers to and is dependent upon the basic felony." [49]

Only *Sudduth* seems to have taken the position that the process of floor amendment to the Gun Control Act resulted in some incongruity in the placement of § 924(c) in the "Penalties" section of the bill. "The penalty section of the Act was probably the best place to insert such a rider, but ... it has to stand on its own feet since it cannot be related to any recitations in the body of the Act." [50] Neither majority in *Simpson* or *Busic* construed § 924(c) as anything other than a sentencing provision despite "separate offense" dictum in *Simpson.* Certainly each dissent assumes the provision only governs enhancement.

This conclusion notwithstanding, intellectual honesty demands that I come firmly to grips with the "separate offense" language. I conclude that when Justice Brennan spoke of a separate offense he intended merely to say that the enhancement provided in § 924(c) is separate from the penalty defined for the underlying crime. No other interpretation can make his statement logically hang with the rest of the opinion and the results it reached. I would apply a similar interpretation to our choice of words in *United States v. Abreu,* 962 F.2d 1447 (10th Cir.1992).

In *Abreu,* we held that the enhancement provided by § 924(c)(1) for a "second or

---

**49.** *Sudduth,* 457 F.2d at 1200.

**50.** *Id.*

subsequent conviction" applies only to convictions which are "chronologically sequential." [51] We reasoned the second or subsequent conviction to which an additional enhancement is to apply must be temporally distinct from any preceding pertinent conviction. During the course of our analysis, we stated "section 924(c) creates distinct offenses rather than being merely a sentencing enhancement provision." [52] Since *Abreu* was not concerned with whether § 924(c) defines a substantive crime, the statement could readily be regarded as dictum and not apposite. Taken in context, however, the statement is more precisely read to suggest the enhancements provided in § 924(c) are distinct from any penalty otherwise attached to the definition of a substantive offense found elsewhere in the statute. Since that meaning is more significant to the court's opinion, that is the one I choose to apply.

Because contextual interpretation is important to my analysis, one further comment about *Sudduth* is necessary. The court chose to construe § 924(c) apart from its context because of the court's conclusion the context was the result of a random insertion of the provision by floor amendment. That erroneous conclusion led the court to hold that § 924(c) is a separate offense. Once one realizes the placement of the section was not random, the reason for departing from the context disappears, and the logic for concluding § 924(c) is

independent does not exist. That leaves no inference but that *Sudduth* was incorrectly decided and should be overruled.

## IV. Legislative Reaction to Simpson and Busic

The legislative reaction after *Simpson* and *Busic* is important as it clarifies Congress' intent that the enhancement provisions of § 924(c) apply with equal force even where enhanced penalties already exist. Subsequent congressional amendment in response to judicial interpretation of a statute is an especially weighty indication of legislative intent when the purpose is unclear in the language of the statute.[53]

### A. The 1984 Amendments: Comprehensive Crime Control Act

In 1984, § 924(c) was amended by the Comprehensive Crime Control Act of 1984 in the Continuing Appropriations Act of that year.[54] The amendatory language is highlighted:

> (c) Whoever, *during and in relation to any crime of violence*,[55] including *a crime of violence which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device*,[56] for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for

51. *Abreu,* 962 F.2d at 1453.

52. *Id.* at 1451.

53. *See* 1A *Sutherland* § 22.29 (4th ed. 1985) (citations omitted).

> The amended statute should be interpreted in light of the court decisions that may have prompted the amendment. The court will examine the title of the amendment. It will consider records of legislative proceedings and reports of legislative committees concerning the amendment; also previous judicial and executive construction.

54. Continuing Appropriations, 1985—Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, ch. 10, sec. 1005(a), § 924(c), 98 Stat. 1837, 2138–39 (1984).

55. The 1970 statute provided:
> (c) Whoever—
>     (1) uses a firearm to commit any felony ... or
>     (2) carries a firearm *unlawfully* during the commission of any felony....
> 1970 Omnibus Crime Control Act, 1970 U.S.C.C.A.N. at 2216–17. The 1984 version deleted "unlawfully" and substituted "during and in relation to any crime of violence."

56. This language merely modified the 1970 iteration to enhance sentences for violent crimes committed with firearms. This section was added specifically to respond to the holdings of *Simpson* and *Busic* that Congress had not intended enhanced penalties to apply to crimes already providing for enhanced sentences. This language again clarifies Congress' intent after *Simpson* and *Busic.*

such crime of violence,[57] be sentenced to imprisonment for *five years*.[58] In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for ten years.[59] Notwithstanding any other provision of law, *the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection*,[60] nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment *including that imposed for the crime of violence in which the firearm was used or carried. No person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein*.[61]

### B. Legislative Purpose of the 1984 Amendments

The amendments to § 924(c) were included in Chapter 10, "Miscellaneous Violent Crime Amendments." [62] Part D of the chapter was titled "Mandatory Penalty for Use of a Firearm During a Federal Crime of Violence." [63] This heading described precisely the intent of Congress in amending § 924(c): to ensure that the imposition by judges of enhanced penalties required in the earlier statute would be mandatory. The Senate Judiciary Committee report on this section remarked:

Part D of title X is designed to impose a mandatory penalty without the possibility of probation or parole, for any person who uses or carries a firearm during and in relation to a Federal crime of violence. Although present Federal law, section 924(c) of title 18, appears to set out a

mandatory minimum *sentencing scheme* for the use or unlawful carrying of a firearm during any Federal felony, *drafting problems and interpretations of the section in recent Supreme Court decisions have greatly reduced its effectiveness as a deterrent to violent crime.*

S.Rep. No. 98–225, 98th Cong., 2d Sess. 312, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3490 (emphasis added).

The report goes on to describe the problems with *Sudduth, Simpson,* and *Busic* in not recognizing that the statute's provision for mandatory enhanced penalties operates independently of other sentences. The majority opinion in this case quotes only part of the Senate Report. The omitted portions are significant, however.

Section 924(c) sets out an offense distinct from the underlying felony and *is not simply a penalty provision. Simpson v. United States,* 435 U.S. 6, 10, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978). Hence, the *sentence* provided in section 924(c) *is in addition to that for the underlying felony* and is from one to ten years for a first conviction and from two to twenty-five years for a subsequent conviction. However, section 924(c) is drafted in such a way that a person may still be given a suspended sentence or be placed on probation for his first violation of the section, and it is ambiguous as to whether the sentence for a first violation may be made to run concurrently with that for the underlying offense. *Some courts have held that a concurrent sentence may be given. United States v. Sudduth,* 457 F.2d 1198 (9th Cir. [sic] 1972); *United States v.*

---

**57.** "Crime of violence" is used instead of the 1970 "commission of a felony," and is defined for the first time in the 1984 statute itself at section 1001 of chapter 10, which added § 16 to title 18, chapter 1 of the U.S. Code 98 Stat. at 2136.

**58.** "Five years" is substituted for the 1970 § 924(c) version "not less than one year nor more than ten years." 1970 U.S.C.C.A.N. at 2217.

**59.** "Ten years" is substituted for the 1970 version "not less than two nor more than twenty-five years." 1970 U.S.C.C.A.N. at 2217.

**60.** This section was added to the 1970 version. The 1970 § 924(c) forbade only the suspension of the sentence "in the case of a second or subsequent conviction...." 1970 U.S.C.C.A.N. at 2217.

**61.** This section simply enhances further the additional penalties amended in 1984 to the 1970 version of § 924(c).

**62.** 98 Stat. at 2138.

**63.** Ch. 10, pt. D, 98 Stat. at 2138.

*Gaines,* 594 F.2d 541 (7th [6th] Cir.1979). Moreover, even if a person is sentenced to imprisonment under section 924(c), the normal parole eligibility rules apply.

In addition to these problems with present section 924(c), the Supreme Court's decisions in *Simpson v. United States,* and *Busic v. United States,* have negated the section's use in cases involving statutes, such as the bank robbery statute and assault on Federal officer statute *which have their own enhanced, but not mandatory, punishment provisions* in situations where the offense is committed with a dangerous weapon. *These are precisely the type of extremely dangerous offenses for which a mandatory punishment for the use of a firearm is the most appropriate.*

S.Rep. No. 98–225 at 312, 1984 U.S.C.C.A.N. at 3490 (emphasis added) (citations omitted).

Admittedly, that portion of the Report which refers to "distinct offense" is confusing. While it could arguably be regarded, in part, as the committee's understanding of § 924(c), read in full context the treatment of *Simpson* by the Report is ambiguous. Indeed, the full text seems more clearly to suggest the committee was only attempting to correct the Supreme Court's refusal to apply § 924(c) as a sentencing enhancement provision, independent of other enhancement provisions. That interpretation is in keeping with the overall concern of the legislation and the other changes to § 924(c) itself, all of which enhance penalties. In this context, because the same words cannot define both crime and punishment, "distinct offense" means "distinct penalty."

Interestingly, the Senate Report also cited *Sudduth,* but to demonstrate the committee's disagreement with judicial decisions which had refused to apply the most severe penalty under the section.[64] The Report put *Sudduth, Simpson,* and *Busic*

in the same category as cases which were too reluctant to impose the stiffest penalties available, and then made those enhanced penalties mandatory.

The Senate Report articulated the purpose of the 1984 amendments:

The Committee has concluded that subsection 924(c) should be completely revised to ensure that all persons *who commit Federal crimes of violence, including those crimes set forth in statutes which already provide for enhanced sentences* for their commission with a dangerous weapon, receive a *mandatory sentence,* without the possibility of the sentence being made to run concurrently with that for the underlying offense or for any other crime and without the possibility of a probationary sentence or parole.

S.Rep. No. 98–225 at 313, 1984 U.S.C.C.A.N. at 3491 (emphasis added) (footnotes omitted). This concentration on mandatory sentencing provisions in the text of the statute and in the committee report better explains the purpose of the bill than the somewhat misleading citation to *Simpson*'s dictum that § 924(c) "creates an offense distinct from the underlying Federal felony."[65]

Last, the addition of a definitional section for "crimes of violence" is further evidence of legislative intent to impose stiffer penalties for any crimes involving firearms. The Report stated:

The term "crime of violence" is defined in Part A of this title.... In essence the term includes any offense in which the use of physical force is an element and any felony which carries a substantial risk of such force. Thus, *the section expands the scope of predicate offenses,* as compared with current law, by including some violent misdemeanors, but *restricts it by excluding non-violent felonies.*

---

**64.** S.Rep. No. 98–225 at 312, 1984 U.S.C.C.A.N. at 3490.

**65.** *Simpson,* 435 U.S. at 10, 98 S.Ct. at 912, *paraphrased in* S.Rep. No. 98–225 at 312, 1984 U.S.C.C.A.N. at 3490 (§ 924(c) "is not simply a penalty provision.").

S.Rep. No. 98–225 at 313 n. 9, 1984 U.S.C.C.A.N. at 3491 n. 9 (emphasis added).

## V. *The 1986 Amendments*

The 1986 amendments to § 924(c) were added as part of the Firearms Owners' Protection Act of 1986.[66] This legislation was part of a broad-based effort over many years to either amend or repeal the Gun Control Act of 1968.[67] Efforts to weaken federal gun control provisions became integrated over the years with a renewed push to strengthen law enforcement. As we have seen with the other predecessor amendments, this legislative purpose was manifested by adding and increasing mandatory penalties.

In the 1986 version of § 924(c), Congress increased the penalties of the subsection and broadened the scope of their application to include *drug trafficking crimes* and crimes committed with machine guns and silencers. The text of the 1984 iteration was amended by adding "or drug trafficking crime" after "crime of violence" in every place it appeared,[68] by modifying references to "firearm" to include machine guns, firearm mufflers, or firearm silencers, and to increase the consequent penalties substantially,[69] and by adding two definitional sections relating to crimes of violence and drug trafficking crimes.[70]

The House Subcommittee on Crime considered several bills before proposing the legislation which amended § 924(c).[71] The House Report on H.R. 4332 is noteworthy as much for its rejection of the proposed bills before the House as for the compromise legislation the Subcommittee crafted. For example, a predecessor Senate bill, S.

49, had proposed adding language to § 924(c) requiring that a firearm be carried "in furtherance of any such crime of violence," as opposed to "during and in relation to."[72] Under the heading, "Weakening current mandatory penalty for using or carrying a firearm in the commission of a crime of violence," the House Subcommittee rejected this proposal.[73]

The second feature of S. 49 rejected by the Subcommittee provided self-defense coverage to an alleged criminal who anticipated "immediate danger," or being arrested by a police officer "unlawfully."[74] The House Subcommittee's discussion of these provisions included the statement that § 924(c) creates a separate offense. Even assuming the Subcommittee's discussion can be read coherently, it was not really concerned with whether § 924(c) creates a separate crime. The Subcommittee stated:

Although the provision, section 924(c) of title 18, U.S.C., is frequently referred to as a penalty enhancement provision it is in reality a separate offense from crimes of violence such as assault with a dangerous weapon. *Simpson v. United States*, 435 U.S. 6, 10, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978). *It is inconsistent to provide a statutory defense for 924(c) and not for other crimes.* This defense could result in prosecutors avoiding the use of 924(c). Eliminating the need to elect between 924(c) in 1984. [sic]

1986 House Report at 10, 1986 U.S.C.C.A.N. at 1336 (emphasis added). This reference was not intended to imply § 924(c) created a separate crime any more than the Report on the 1984 amendments.

---

**66.** Firearms Owners' Protection Act, Pub.L. No. 99–308, 100 Stat. 449 (1986).

**67.** H.R.Rep. No. 99–495, 99th Cong., 2d Sess. 3–5, *reprinted in* 1986 U.S.C.C.A.N. 1327, 1329–31 [hereinafter 1986 House Report].

**68.** Sec. 104(a)(2)(B), (C), § 924(c)(1), 100 Stat. at 456–57.

**69.** Sec. 104(2)(D), (E), § 924(c)(1), 100 Stat. at 457.

**70.** Sec. 104(a)(2)(F), § 924(c)(2), (3), 100 Stat. at 457.

**71.** 1986 House Report at 5, 1986 U.S.C.C.A.N. at 1331.

**72.** 1986 House Report at 9, 1986 U.S.C.C.A.N. at 1335.

**73.** *Id.*

**74.** 1986 House Report at 9–10, 1986 U.S.C.C.A.N. at 1335–36.

Again, the cite to *Simpson* seems to be a lock step recitation of what was said before. If anything, the Report implied that § 924(c) was different from crimes of violence to which self-defense would apply.

Reporting on the "Positive Features of S. 49 and H.R. 945," the Subcommittee stated:

> S. 49, as a part of its rewrite of the *mandatory penalty provisions* strengthened in the last Congress (18 U.S.C. 924(c)), would *apply the penalty* to a person who uses or carries a firearm during and in relation to "any felony described in the Controlled Substances Act.... H.R. 945 has no such provision.
>
> H.R. 4332 includes such a provision.

1986 House Report at 15, 1986 U.S.C.C.A.N. at 1341 (emphasis added). This clearly implies Congress understood the amended section of H.R. 4332 would expand the application of *penalties* to cover an increased number of underlying crimes.

## VI. *The 1988 Amendments*

Section 924(c) was amended in 1988 as part of the Anti–Drug Abuse Act of 1988.[75] Subtitle N, "Sundry Criminal Provisions," contained section 6460, entitled "Enhanced Penalties for Use of Certain Weapons in Connection with a Crime of Violence or Drug Trafficking Crime."[76] The amendments were concerned exclusively with doubling and trebling penalties for using weapons in connection with violent crimes and drug trafficking crimes.

## VII. *The 1990 Amendments*

Section 924(c) was amended in 1990 by the Crime Control Act of 1990.[77] The amendments made one technical correction,

added short-barreled rifles, shotguns, and destructive devices to the list of penalized firearms, and provided for sentence enhancement. These changes are precisely in the model of both the 1986 and 1988 amendments—broadening the scope of underlying offenses to which increased and mandatory sentences apply.

The Crime Control Act of 1990 was passed in both houses October 27, 1990.[78] Two House reports accompanied two separate House firearms bills.[79] Of the § 924(c) amendments, the House Report of the Judiciary Committee stated:

> During full Committee mark-up, the Committee approved an amendment by Mr. Glickman *to increase the mandatory additional penalties* for using or carrying certain weapons during a crime of violence or a drug felony. The Glickman amendment provides *an additional mandatory 10 years imprisonment* when the weapon in question is a sawed-off shotgun or rifle, and *an additional 30 years* if the weapon is a destructive device (such as a bomb, grenade, rocket, or mine, as defined in 18 U.S.C. 921(4)).

H.R.Rep. No. 101–681(I) at 107, 1990 U.S.C.C.A.N. at 6511 (emphasis added). The 1990 substantive amendment operates in the now too familiar mode of increasing sentences for the use of firearms in the commission of underlying crimes and making those sentences mandatory. This amendment brings § 924(c)(1) to the form we construe today.

## VIII. *Cases Cited by the Majority*

The cases cited and relied upon by the majority deserve special mention. From the Fifth Circuit, the majority cites *United States v. Wilson*, 884 F.2d 174 (5th Cir.

---

**75.** Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, sec. 6460, § 924(c)(1), 102 Stat. 4181, 4373 (1988).

**76.** Sec. 6460, § 924(c)(1), 102 Stat. at 4373.

**77.** Crime Control Act of 1990, Pub.L. No. 101–647, sec. 1101, sec. 3527, § 924(c)(1), 104 Stat. 4789, 4829, 4924 (1990).

**78.** 1990 U.S.C.C.A.N. at 6472.

**79.** H.R.Rep. No. 101–681(I), H.R.Rep. No. 101–681(II), 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6622.

1989), and *United States v. Munoz–Fabela,* 896 F.2d 908 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 76, 112 L.Ed.2d 49 (1990). *Wilson* does not deal with whether § 924(c) constitutes an independent crime. Because the defendant was arrested getting into a methamphetamine filled vehicle with a weapon stuck in his belt, the jury was instructed it had to find the pistol was carried "during and in relation to the predicate drug offense." *Wilson,* 884 F.2d at 177. In other words, the court effectively incorporated a substantive crime into the § 924(c) charge. It then required the government to prove the substantive offense was committed to sustain its burden of proof on the § 924(c) count even though the predicate offense was not charged. I believe this is a hybrid situation which begs the issue before us. Although the Fifth Circuit did have the precise question of whether § 924(c) is a distinct crime before the court in *Munoz–Fabela,* it refused to consider the issue because the court believed it had been decided in *Wilson. Munoz–Fabela,* 896 F.2d at 910. A careful reading of *Wilson* demonstrates that belief was misplaced.

From the Ninth Circuit, the majority cites *United States v. Hunter,* 887 F.2d 1001 (9th Cir.1989) (per curiam), *cert. denied,* 493 U.S. 1090, 110 S.Ct. 1159, 107 L.Ed.2d 1062 (1990); *United States v. Robertson,* 901 F.2d 733 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 395, 112 L.Ed.2d 405 (1990); and *United States v. Wilkins,* 911 F.2d 337 (9th Cir.1990). Only *Hunter* is on point with our case. In the other two, the reference to § 924(c) as an independent offense is dictum. Notwithstanding, the wellspring from which the Ninth Circuit cases draw that statement is *United States v. Dixon,* 558 F.2d 919 (9th Cir.1977), *cert. denied,* 434 U.S. 1063, 98

S.Ct. 1237, 55 L.Ed.2d 764 (1978), in which the court held without analysis that § 924(c) is a separate crime. Authority for that conclusion was *Sudduth* and its progeny. *Dixon,* 558 F.2d at 921.

From the Eleventh Circuit, the majority cites *United States v. Hamblin,* 911 F.2d 551 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2241, 114 L.Ed.2d 482 (1991), and *United States v. Martinez,* 924 F.2d 209 (11th Cir.1991). *Hamblin* was a case in which the defendant was convicted of bank robbery, and § 924(c) was employed as a sentence enhancement. *Martinez* was another enhancement case in which the court, in dictum contained in a footnote without reasoning, stated § 924(c) was a separate offense. *Martinez,* 924 F.2d at 211 n. 2.[80]

These cases do not provide a sound basis for continuing the error we made in *Sudduth.* Moreover, a close reading of the cases demonstrates no court other than *Sudduth* attempted an analysis of § 924(c). This judicial history shows a shibbolethic willingness to reach a conclusion rather than a carefully reasoned development of a point of law. What has thus evolved is more judicial lore than judicial logic. That lore should not move us to perpetuating the error we ourselves have created.

IX. *Summary*

Having traced in detail the legislative events which have led us to the present enactment of § 924(c), I believe I have shown why it is error to conclude that section constitutes a crime upon which a criminal conspiracy can be based. First, the legislative history makes plain the text of the 1968 provision and every set of amendments since 1968 deals exclusively with penalty enhancement and with broad-

**80.** The majority describes six cases nationwide, other than the three brought by the prosecutor in this case, which charge a conspiracy to violate § 924(c). I agree with the majority that five of these involve conspiracy charges to violate another crime in conjunction with § 924(c). Majority proposed opinion at 1470 n. 1. The sixth, *United States v. Harris,* 959 F.2d 246 (D.C.Cir.1992) (per curiam), upheld two conspiracy convictions against a duplicity challenge. In my view, this case is also inapposite as the court never considered directly whether § 924(c) creates a distinct crime. Thus the court was not called upon to, and did not, decide the issue before us.

ening the scope of the underlying crimes to which those enhanced penalties apply.

Second, when Congress wanted to criminalize certain unlawful acts, it did so under the title "Unlawful acts" in Chapter 44. When it wanted to enhance penalties, it did so by amending the original "Penalties" section of Chapter 44, and by entitling every amendment since then "Stricter Sentences," or "Mandatory," "Minimum," or "Enhanced Penalties." There are also various other sections in each Act relating to "Enhanced Penalties" for other crimes specified in those statutes.

Third, these amendments provide clear indicia of the unaltered legislative purpose Congress has followed since first enacting § 924(c). The 1970 amendments were important in clarifying Congress' initial attempt to enhance sentences for crimes committed with firearms. This enhancement purpose was manifested in modifying the first sentence by the phrase "in addition to the punishment provided for the commission of such felony." The most significant changes in § 924(c), however, were in the 1984 amendments when Congress increased sentences and made enhanced application of those penalties mandatory for the courts. The 1986, 1988, and 1990 amendments are all variations on this theme.

Consequently, there exists one dominant legislative motive throughout the history of this law. In the adoption of the original version of § 924(c), and in each of the amendments in the ensuing chain of legislative events, Congress has never departed from its initial concept of providing enhanced penalties for certain underlying crimes through the vehicle of § 924(c). Despite what clearly may be regarded as aberrational dicta in legislative reports, this unbroken chain belies the notion that any of the iterations of the section produced an independent crime. Moreover, the original analysis which has led us and other courts to conclude § 924(c) is a substantive crime was based upon an unfounded premise which has skewed judicial reasoning. I, therefore, dissent from the conclusion that would allow the conviction of Mr. Hill to stand.